## IN THE DISTRICT COURT OF KNOX COUNTY, TENNESSEE

FILED

2019 MAR 22 P 3:

U.S. DISTRICT COURT
EASTERN DIST. TENN.

_____DEPT. CLER

SUSAN CARRICHNER,  )
)
)
Plaintiff,  )
)
)
v.  )   No. 3:19-cv-98
)   Mattice/Poplin
)
KENNETH R. DAVIN, individually  )
and N.I.C. MANAGEMENT, LLC  )
creator of the "ALTHEA 501 TRUST"  )
)
Defendants.  )

---

## COMPLAINT

---

COMES NOW, Plaintiff Susan Carrichner, *pro se* with causes of actions against

Defendants and avers as follows:

### PARTIES

1.  Plaintiff Susan Carrichner is a resident of the state of Tennessee and has done

    business with Defendant Davin and N.I.C. Management creator of "Althea 501

    Trust" as President of Dragonfly Investments Corporation, a Tennessee

    Corporation solely owned by Carrichner when allegedly "Althea 501 Trust"

    purchased a personal property only triple net Ground Lease Agreement to permit

    use and enjoyment of a building known as "The Althea Building" on October 31,

    2014 from Dragonfly Investments Corporation. Plaintiff is also currently a

    Plaintiff and Co-Plaintiff in a number of other lawsuits initiated against Defendant

    Davin including but not limited to one in Knox County, Tennessee Chancery

    Court (Case No.: 197170-3), one in Sheridan County District Court in Wyoming

1

(Case No.: CV-2019-51), and one in Circuit Court in Knox County Tennessee

(Case No.: 1-97-19) related to the fraudulent and inappropriate business practices

of Davin. Carrichner has been assigned the right to collect against N.I.C.

Management, Inc., creator of "Althea 501 Trust", and Kenneth R. Davin,

individually by resolution of Dragonfly Investments Corporation and an

Assignment Agreement dated February 28, 2019, of which Carrichner is the sole-

shareholder. Carrichner receives business and personal mail at: Post Office Box

1062, Knoxville, Tennessee 37901.

2. Defendant, Kenneth R. Davin is the sole beneficiary of the alleged "Althea 501

Trust" (See Exhibit A: Althea 501 Trust, hereto attached), a void *ab initio* and

unlawfully executed land trust alleged to be managed by N.I.C. Management,

LLC located in Vero Beach, Florida. Defendant Davin currently resides at 8217

Sharp Road, Powell, TN 37849.

3. N.I.C. Management, LLC is the creator and Stephen Denny of Vero Beach florida

is the alleged Managing Partner of the void *ab initio* "Althea 501 Trust" as

outlined in the Florida land trust agreement dated October 30, 2014 (Hereto

attached as Exhibit A) which was set up unlawfully as a "self-proven" Florida

land trust allegedly formed by Defendants for the purpose of transferring the

Ground Lease Agreement between the parties for the building (personal property

only) and NOT the actual land (real property).  Further, N.I.C. Management is a

real property land trust management company located in and around Vero Beach,

Florida, and is the Trustee for many Florida land trusts created and formed for

Defendant Kenneth R. Davin as beneficiary and controller and financial

benefactor of the real estate assets held by the land trusts. Steven Denny, also of

Vero Beach, Florida, is the managing partner and designated "Trustee" of virtually all of Defendant Davin's Florida Land Trusts and is designated as such on the improperly executed "Althea 501 Trust" (See Exhibit A).

## JURISDICTION and VENUE

4. This court has diversity jurisdiction in this matter based upon 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Plaintiff lives in Knoxville Tennessee, and was the legal Lessee of the Ground Lease Agreement for the building known as "The Althea Building" (which provides rights to the physical building only as personal property, with a responsibility to pay a monthly Ground Lease Payment of approximately $1,850.00) located at 501 W. Clinch Avenue, in Knoxville, Tennessee, Knox County, Tennessee; and Defendant Kenneth R. Davin's current residence and corporate offices are located in Knox County, in the state of Tennessee. The Registered Agent for the alleged "Althea 501 Trust" and N.I.C. Management, LLC is Corporate Creations Network, Inc. located in the state of Florida. Venue is proper in the District Court pursuant to 28 U.S.C. § 1391.

## FACTS

5. Due to the fraudulent actions and business practices of Defendant, Kenneth R. Davin, Plaintiff Susan Carrichner has remained the sole owner of Dragonfly Investments Corporation from 2011 to present.

6. The land/real property, located at 501 W. Clinch Avenue, Knoxville, TN 37902 is owned by James Monday, of Knoxville, Tennessee (See Exhibit B: Ground Lease Agreement, hereto attached) and is not for sale or transfer.

7. Dragonfly Investments Corporation owned the Ground Lease Agreement with real property owner James Monday of Knoxville, Tennessee, (See Exhibit D: Assignment of Lease Dragonfly Investments Corporation dated May 5, 2011, hereto attached) prior to Plaintiff Carrichner meeting Defendant Davin when he made an offer to purchase the Ground Lease Agreement from Dragonfly Investments Corporation in October 2014. At that time, Defendant Davin refused to purchase the stock in Dragonfly Investments Corporation to acquire the Ground Lease Agreement as an asset of Dragonfly Investments Corporation and instead chose to purchase the Ground Lease Agreement by transfer of the Ground Lease Agreement to an alleged trust called "Althea 501 Trust"—the "sale" took place October 31, 2014 for the price of approximately Two-Hundred-Twelve-Thousand ($212,000.00) Dollars payable to Dragonfly Investments Corporation by Althea 501 Trust. (See Exhibit B)

8. In and around April 1, 2015, Plaintiff Carrichner began working with Defendant Davin in the capacity of a non-paid consultant being reimbursed only for expenses associated with services encompassing all of Defendant Davin's business entities and personal income related rental properties in multiple states, including Tennessee; until December 15, 2018 during a phone conversation while in the state of Washington, she confronted Defendant Davin with some telltale questions regarding his suspect Personal Financial Statements. Based on Defendant Davin's unsubstantiated assets, alleged values, and false representations, Carrichner

refused to keep helping him. (In late fall of 2018, Plaintiff was made aware of other non-disclosed fraudulent activities and multiple business transactions and business practices that were unethical and, to the best of Plaintiff's knowledge and belief, *illegal*; none of which she chose to mention when she confronted Davin on December 15, 2018.)

9.  It was during Plaintiff's more than four (4) year intimate business relationship with Defendant Davin that she came to understand how Davin used "land trusts" to hold real property (land/real estate) he purchased to coverup the fact that Davin privately only *controlled* the real property and enjoyed all of the financial and asset benefits of the real estate as the "*beneficiary*" of the Florida land trusts; although Plaintiff did not actually have the opportunity to read the details of the agreements until Carrichner began an attempt to prove the validity of proof of service on another land trust on or about January 28, 2019 (not related to this case) wherein she discovered that the land trust was void *ab initio*.

10. In and around early fall of 2017, after noticing that the numerous copies of Land Trusts Defendant had in his office were not fully executed by all parties (i.e.: missing notarized indicias and other original signatures), Plaintiff Carrichner informed Defendant Davin that he needed to acquire a complete file of copies of all of the original land trust documents. At the direction of Defendant Davin, all of the land trusts that were processed by N. I. C. Management, LLC were emailed to Carrichner from N.I.C. Management, LLC by officer Danielle Vosbourgh. To the dismay of Plaintiff, they were the same copies that Davin had in his files already—incomplete and missing signatures of all parties and missing notary public insignias. Carrichner repeatedly encouraged Davin to correct the

inappropriately executed Florida land trust documents; which as of December 15, 2018 (the last day that Plaintiff or her assistant had physical access to the documents) *none* were properly corrected, re-formed or the original documents perfected. Notably, any land trust documents or paperwork alleging proper execution of the land trusts formed by N.I.C. Management, LLC presented after December 15, 2018 would be forgeries. Carrichner verified with Danielle Vosbourgh that what she emailed to Plaintiff is all that N.I.C. Management, LLC had on file or in their records for Davin. (Exhibit A is an *exact* copy of the Althea 501 Trust agreement provided to Plaintiff by Vosbourgh.)

11. When Plaintiff began to disassociate herself from Defendant Davin, she realized that the "Althea 501 Trust" had serious problems (in excess of the void *ab initio* "self-proven" trust itself) with regard to the "sale" of the Ground Lease Agreement to "Althea 501 Trust" in 2014. (Actually, Plaintiff has other instances of void *ab initio* business transactions between Dragonfly Investments Corporation and Defendant Davin, which are *not* a part of this instant case.) Following are a few of the problems with Defendant N.I.C. Management, LLC's creation of "Althea 501 Trust" rendering the trust and the sale void *ab initio*:

    (a) "Althea 501 Trust" was not legally formed pursuant to Florida law; as a self-proven non recorded Florida land trust formed between Defendant Davin, "Althea 501 Trust" and N.I.C. Management, LLC., or otherwise;

    (b) Being the "Althea 501 Trust" is not legally formed, it does *not* exist.

    (c) Pursuant to Florida and Tennessee law, non-formed entities cannot enter into legally binding contracts, as the entities do not exist. The

same applies to corporate entities which are administratively dissolved; they too do not exist and cannot conduct business with the benefits of a corporation or enter into contracts; nor on the flip side can such entities be held liable for debts or other such responsibilities;

(d) The incorrectly executed "Althea 501 Trust" document (See Exhibit A, hereto attached) was emailed to Plaintiff Carrichner at Defendant Davin's request in the fall of 2017 from N.I.C. Management, LLC represented to be the *only* copies N.I.C. Management, LLC had on file, acknowledging that the documents were without proper signatures. The trusts were void *ab initio* as to the legal requirements pursuant to Florida *or* Tennessee law with regard to the legal formation of revocable trusts. Again, none of the Florida land trust documents were properly executed at the time Plaintiff stopped consulting with Defendant Davin on or about December 15, 2018; and presentation of any such fully "executed" document(s) meeting Florida's legal statutes would be a forgery.

(e) There is another issue with the transfer of a Ground Lease Agreement to a "land trust" as a Ground Lease Agreement is *not* a "purchase of real property" and the land (real property) did not belong to Dragonfly Investments Corporation to "transfer"—it is simply a lease that affords the Lessee the right to use and enjoy the *building* for profit until the term of the lease is expired, at which time the building, its use and enjoyment and right to profit returns to the owner, James Monday.

(f) The Althea Building appears on at least one of Defendant Davin's Personal Financial Statements (PFS) as an asset with a greatly over-inflated value in excess of One-Million-Four-Hundred-Thousand ($1,400,000.00) Dollars. (As an example of the fraudulent business practices of Defendant Davin, the same PFS indicates that the property earns in excess of Sixteen-Thousand [$16,000.00] in monthly rental income. (See Exhibit C: Schedule C of Davin's PFS, hereto attached) Truth is, the building has been vacant of any renters since early 2017 and is completely gutted on the second (2nd) and third (3rd) floors. All work having been done without applicable City building permits. (The addition of such an alleged asset to the Personal Financial Statement of Davin is not proper, has not been disclosed as such on Davin's personal tax returns and has income tax implications—all an example of the normal non-conforming business practices of Defendant Davin.) The fact that "Althea 501 Trust" is a land trust and not the proper type of trust to hold such an asset further negates the validity of the entity even if the trust had been correctly executed.

12. The fact is, Dragonfly Investments Corporation is still solely owned by Plaintiff Carrichner which leaves the company and its sole shareholder (and perhaps James Monday, the land owner) liable for the non-permitted work on the building which is subject to substantially high fines and fees by the City of Knoxville. The total damages associated with the violation of City Codes and the pending enforcement action(s) are unknown at this time.

13. Although, Dragonfly Investments Corporation was paid money for the purchase of the Ground Lease Agreement, as outlined in paragraph 7 above, there remains substantially more money damages due (in excess of the high fines and fees in Paragraph 12 above) to Dragonfly Investment Corporation from Defendants because of the current gutted condition of the building and the following currently outstanding unpaid financial obligations per the Ground Lease Agreement, including but not limited to:

   (a) Restoration of the building back to its very nice and rentable condition at the time Defendant Davin was provided the keys in October 2014 is estimated to exceed $600,000.00;

   (b) Any unpaid Ground Lease Payments due James Monday which continue to escalate monthly;

   (c) Any equipment or utility related costs which have been left unpaid all of which are unknown at this point;

   (d) Outstanding City Property Taxes in the amount of $8,529.79.

   (e) Outstanding Knox County Property Taxes in the amount of $6,463.52.

   (f) Maintenance of the elevator which has not been maintained for more than two (2) years and has been appropriately shut down by the state.

14. The Ground Lease Agreement is a "triple net ground lease" wherein all costs associated with the building must be paid by the Lessee and at the end of the ground lease term, the ownership of the building reverts back to James Monday.

15. Defendant Davin has *no* land ownership whatsoever to place the property or the lease in a "land trust" and as previously stated herein, Plaintiff has just recently learned that the "Althea 501 Trust" was actually an improperly executed "land

trust", void *ab initio*; and *not* a Revocable Trust meant to hold assets which are not land/real property based on the word "land" purposely being omitted from the name of Althea 501 Trust.

16. Under the circumstances (because no sale ever transpired due to the "Althea 501 Trust" being void *ab initio* [effectively a "*nobody*"] and non-existent at the time the contract was signed), nor has the issue been corrected in the last four (4+) plus years, ownership reverts back to Plaintiff Carrichner as sole shareholder in Dragonfly Investments Corporation who retains ownership of the building via the Ground Lease Agreement with James Monday.

17. Although, perhaps under different circumstances, Plaintiff Carrichner might be open to reinitiating the "sale" of the Ground Lease Agreement by way of a "newly executed agreement" between Defendant Kenneth R. Davin and Dragonfly Investments Corporation and consummating a legal transfer after-the-fact, Carrichner is *not* inclined to do so because:

    (a) Defendant Davin owes Plaintiff in excess of Five-Hundred-Thousand ($500,000.00) Dollars from other business ventures between the parties wherein Davin was fraudulent, and more (as outlined in Paragraph 1 herein); and

    (b) Defendant Davin has refused to settle with Plaintiff, or to pay Carrichner what she is owed causing Plaintiff to incur costs associated with legal action in multiple states and on multiple issues to enforce payment by Davin to Carrichner; and

    (c) Defendant Davin has usurped other equitable assets from Carrichner; and

(d) Defendant Davin has *never* had any individual ownership in Dragonfly Investments Corporation whatsoever; and his attempt to purchase the stock in the corporation in 2017 was also void *ab initio* being the *new* "LLC" entity (which would have been the actual receiver of the corporate stock) was never formed *either*. Notably, Defendant Davin breached his promises that the *new* "LLC" entity was to be an "Irrevocable Trust" set up for the benefit of Plaintiff until her passing, which Davin fraudulently misrepresented to Carrichner up and until December 19, 2018; and

(e) Defendant Davin has fraudulently attempted to usurp ownership individually of Dragonfly Investments Corporation by listing himself individually as the "100% owner of the stock" of the corporation on its 2017 income tax return; knowing full well that the *new* "LLC" was never formed; in direct violation of the agreement of the parties; and

(f) Defendant Davin has fraudulently and without the knowledge or preapproval of Plaintiff, on or about December 3, 2018, changed Plaintiff's name to Defendant Davin's as the Registered Agent and controller of Dragonfly Investments Corporation, in a last ditch attempt to gain control of something that he never had the right to do as an individual.

18. Most importantly, Plaintiff would *not* have sold and assigned the Ground Lease Agreement to Defendant(s) had Plaintiff *known* at the time that "Althea 501 Trust" was a "land trust" and *not* a trust for the purpose of holding personal property. The name of the trust did not contain the word "land" as does the other

land trusts of which Defendant Davin is the beneficiary. Further, Plaintiff would not have sold the Ground Lease Agreement to Defendant(s) had Plaintiff *known* at the time that the entity did not actually *exist*—as Plaintiff is law savvy enough to know that the ownership of the "building" being transferred to a *non-entity* would make the contract void *ab initio*; and, ultimately, Plaintiff would remain *responsible* for the liabilities under the Ground Lease Agreement, as it is not possible to sell or transfer ownership to a *nobody*. Plaintiff was *selling* the Ground Lease Agreement because at the time she was financially unable to continue to satisfactorily meet the liabilities under the Ground Lease Agreement *and* pay the mortgage she had on the agreement. Respectfully, Plaintiff *nor* Dragonfly Investments Corporation could *afford* to resume those liabilities anytime in the near or distant future due to other financial obligations at the time. So, under those set of facts at the time, *no* deal.

19. Defendant Davin had no regard for the validity of the "Land Trusts" created by N.I.C Management, LLC nor did the Trustee, as the trust documents were not made to be "recorded" as clearly marked on Exhibit A; an intentional act of negligence by all Defendants if for no other reason than obliquity and/or laziness.

20. The end result, Defendants *do not* own or control The Althea Building.

## CAUSE OF ACTION 1: Non-Entity Can Not Consummate a Contract

21. Tennessee Law has held that a "non-entity" cannot execute a contract:

> By sheer definition, a non-entity is:
>
> *A noun, blank cipher, existenceless, inexistence, insignificance,*
>
> *insignificancy, matter of no importance, nihil, no one, nobody, nonbeing,*

*nonexistence, nothing, nothingness, nought, nullity, terrae filius,*

*unsubstantiality"*

22. Tennessee, Florida *and* Federal case law is fundamentally based on the fact that

contracts entered into by a non-entity are void *ab initio*:

> See *Alex BROWN, Appellant, v. M STREET FIVE, LLC, Appellee.*
>
> *(Nos. 11–CV–103, 11–CV–152, 11–CV–607, 11–CV–834) District of*
>
> *Columbia Court of Appeals*

And, although the "Trust" is not specifically a "Corporation", the "Althea 501

Trust" implied entity *is* a similar "person" as described in Florida law. Thus, a

"trust's" ability to act as a "person" without proper legal standing mirrors the

inability to act as a "person" (similarly pursuant to T.C.A. 48-24-202) and had no

legal standing to execute a contract in as a non-entity (*nobody*):

> *"(c) A corporation administratively dissolved continues its corporate*
>
> *existence but may not carry on any business except that necessary to wind*
>
> *up and liquidate its business and affairs under § 48-24-105 and notify*
>
> *claimants under §§ 48-24-106 and 48-24-107."*

23. Thus, based on the "Facts" in this case, Plaintiff has a viable cause of action

against Defendants and also retains ownership of the Ground Lease Agreement

(Exhibit B hereto attached) as *ownership reverts back to the original owner* when

a contract is rendered void *ab initio*.


**CAUSE OF ACTION 2: Fraudulent Misrepresentation**

24. Fraudulent misrepresentation is the strongest action related to contracts.

Defendants have knowingly fraudulently misrepresented that a "Land Trust"

existed at the time the contract was made between the parties which renders the contract void *ab initio* as it was entered into fraudulently by Defendants; neither of which made any attempt to correct the validity of the entity or comply with normal business practices and procedures for more than four (4) years after the fact—even when *all* Defendants had been fully notified by Plaintiff in the fall of 2017 that the land trusts were not fully executed.

25. Plaintiff did not fully realize until February, 2019 that the Ground Lease Agreement sale via contract between Dragonfly Investments Corporation and "Althea 501 Trust" was void *ab initio* when Plaintiff reviewed the particulars of what is required of Florida law to validate a Land Trust (in connection with another conversion of and fraudulent transfer of real property into an improperly executed land trust by Defendants not related to this case) and determined that "Althea 501 Trust" did not meet the criteria. Shockingly, Plaintiff also discovered that under the circumstances Plaintiff is also in *this* instance contractually liable for the financial responsibilities of "The Althea Building" due to the fraudulent actions of Defendant Davin regarding Dragonfly Investments Corporation as ownership of the Ground Lease Agreement reverts back to ownership of sole shareholder Plaintiff Carrichner (which also has happened in a similar "void *ab initio*" act concerning Dragonfly Investments Corporation and Defendant Davin, not a party to this case), and the poor business practices of Davin including the non-payment of outstanding IRS debt and items listed in Paragraph 13 above.

26. Plaintiff has suffered damages as outlined in the "Facts" of this Complaint and in Plaintiff's Affidavit, here to attached.

27. Plaintiff would *never* have entered into a sales contract with a "*nobody*" which further effectively resulted in "Frustration of Purpose" as discussed herein; and thus, Plaintiff has such cause of action against Defendant pursuant to Common Law in both Tennessee and Florida.

**CAUSE OF ACTION 3: Bad Faith and Fraudulent Concealment**

28. Defendants (each of them being seasoned professionals as to Florida "Land Trusts" as a "Trustee" or "Beneficiary" of multiple land trusts) have acted in bad faith failing to disclose *or* correct the non-existence of the receiving void *ab initio* entity ("Althea 501 Trust"). Defendants have covered up the fraudulent transfer of a "Ground Lease Agreement" which has nothing to do with the transfer of *actual personal property* ("The Althea Building") to a "Land Trust" which is not lawful in Tennessee *or* Florida, and has placed Plaintiff in grave financial jeopardy with the land owner and the City of Knoxville with respect to the building Dragonfly Investments Corporation still owns but has not operated since October 31, 2014, as outlined in the "Facts" herein. In support thereof:

> "Tennessee Supreme Court explained, '[t]he tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury.' Chrisman v. Hill Home Dev., Inc. 978 S.W.2d 535, 538-39 (Tenn.1998) (citing Simmons v. Evans, 185 Tenn. 282, 206 S.W.2d 295, 296 (1947)). The duty to disclose arises in three distinct circumstances: (1) '[w]here there is a previous definite fiduciary relation between the

*parties,' (2) '[w]here it appears one or each of the parties to the contract*

*expressly reposes a trust and confidence in the other,' and (3) '[w]here the*

*contract or transaction is intrinsically fiduciary and calls for perfect good*

*faith.' Domestic Sewing Mach. Co. v. Jackson,83 Tenn. 418, 425 (1885)."*

Plaintiff has a cause of action as such as outlined in the "Facts" of this case.

### CAUSE OF ACTION 4: Negligent Misrepresentation

29. Plaintiff has a viable cause of action against Defendants as outlined in the "Facts"
of this case. Further, Tennessee has adopted [Section 552 of the Restatement
(Second) of Torts] 'as the guiding principle in negligent misrepresentation actions
against other professionals and business persons.' *Bethlehem Steel Corp. v. Ernst
& Whinney*, [822 S.W.2d 592, 595 (Tenn. 1991)]. Section 552 provides, in
pertinent part, as follows:

> *(1) One who, in the course of his business, profession or employment, or*
> *in any other transaction in which he has a pecuniary interest, supplies*
> *false information for the guidance of others in their business*
> *transactions, is subject to liability for pecuniary loss caused to them by*
> *their justifiable reliance upon the information, if he fails to exercise*
> *reasonable care or competence in obtaining or communicating the*
> *information.*
>
> *(2) Except as stated in Subsection (3), the liability stated in Subsection (1)*
> *is limited to loss suffered*
>
> *. . .*
>
> *(b) through reliance upon it in a transaction that he intends the*

> information to influence or knows that the recipient so intends or in a
> substantially similar transaction.

And;

[RESTATEMENT (SECOND) OF TORTS, § 552 (1977) (emphasis added)]." *Id.*
at 427.

> *"In discussing the requirements for recovery under Section 552, this Court*
> *has stated that liability in tort will result, despite the lack of contractual*
> *privity between the plaintiff and defendant, when,*
>
>> *(1) the defendant is acting in the course of his business, profession,*
>> *or employment, or in a transaction in which he has a pecuniary (as*
>> *opposed to gratuitous) interest; and*
>> *(2) the defendant supplies faulty information meant to guide others*
>> *in their business transactions; and*
>> *(3) the defendant fails to exercise reasonable care in obtaining or*
>> *communicating the information; and*
>> *(4) the plaintiff justifiably relies upon the information.*

*John Martin Co.*, 819 S.W.2d at 431 (emphasis added); *accord Ritter*, 912 S.W.2d
at 130." *Id.*

> *"Applying this formulation of the rule, this Court has allowed non-clients*
> *to recover from attorneys under Section 552. See Collins v. Binkley, [750*
> *S.W.2d 737 (Tenn. 1988)]; Stinson v. Brand, [738 S.W.2d 186 (Tenn.*

*1987)]. In these cases, the lawyers had negligently provided erroneous information in the course of real estate transactions which was relied upon by nonclient participants to the transactions. This Court held recovery was appropriate, even though the plaintiffs were not clients, because the advice was given for the guidance of the plaintiffs in the course of the real estate transaction and reliance upon that advice was justifiable and foreseeable." Id.*

*"Likewise, in the non-lawyer cases involving application of Section 552, recovery has been allowed only when the advice or information negligently supplied was given in the course of a commercial or business transaction for guidance of others in their business transactions. See e.g. Bethlehem Steel Corp., 822 S.W.2d at 592 (national accounting firm which negligently prepared an audit report regarding customer of manufacturer held liable to manufacturer which relied upon the audit report to its detriment in extending credit to customer); John Martin Co. , 819 S.W.2d at 429 (construction manager who negligently supplied information regarding the construction project held liable to subcontractor who relied upon the information in performing work at the site; Tartera v. Palumbo, [453 S.W.2d 780 (Tenn. 1970)] (land surveyor who negligently prepared a plat for the purchaser of property held liable to sellers because he had full knowledge that the survey was to be used for describing the property in the warranty deed upon which both the sellers and buyers would rely); Shelby v. Delta Air Lines, Inc., [842 F.Supp. 999, 1015 (M.D. Tenn.*

*1993)] ('The Tennessee cases involving negligent misrepresentation all*

*involve commercial transactions.'). " Id. at 427-28.*

30. In *all* cases, Plaintiff relied on the representations of Defendant(s) that "Althea 501 Trust" was a valid entity and that it had the capacity to execute the contractual transfer of the Ground Lease Agreement with Dragonfly Investments Corporation. Clearly, it did not; an act of which has placed Plaintiff as sole shareholder of Dragonfly Investments Corporation at substantial risk and unforeseen financial responsibility.

WHEREFORE, Plaintiff respectfully moves this Court for the following:

1. An Order directing Defendant vacate the Althea Building within ten (10) days of the entry of the Order; and

2. An ORDER for Damages for restoration of the building back to its very nice and rentable condition at the time Defendant Davin was provided the keys in October 2014 in the amount of $600,000.00; less the purchase price of $212,000.00 paid by Defendant(s) at closing; and

3. An ORDER that Defendant(s) pay any unpaid Ground Lease Payments due James Monday which are due and payable at the time of the ORDER; and

4. An ORDER that Defendant(s) pay any equipment or utility related costs which have been left unpaid which are due and payable at the time of the ORDER; and

5. An ORDER that Defendant(s) pay any outstanding City Property Taxes and Knox County Property Taxes that are due and payable at the time of the ORDER; and

6. An ORDER that Defendant Davin will be responsible for any and all costs, fees, penalties, or other expenses as a result of his non-compliance and ultimate violation of the laws of the City of Knoxville and Knox County with regard to

acquisition of permits and the submission of building plans during the time

Defendants had control of the building.

7. PUNITIVE DAMAGES in the amount of $250,000.00 or the maximum amount

allowed by this governing authority, and

8. STATUTORY DAMAGES allowable by this governing authority; and

9. any other relief of which this Court may deem appropriate.

Respectfully submitted this 22nd day of March, 2019.

By: _____

Susan E. Carrichner, *pro se*
Post Office Box 1062
Knoxville, TN 37901
865-919-7419

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Complaint was served upon Defendant Kenneth R. Davin at 8217 Sharp Road, Knoxville, Tennessee 37849 or other place where he may be located, and Defendant N.I C. Management, LLC at the office of their Registered Agent: CORPORATE CREATIONS NETWORK, INC. located at 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, Florida 33410 by hand-delivery and/or US Mail or a certified delivery service (and also by service of process via a process server per the return of process to the court) on this the 22nd day of March, 2019.

Susan E. Carrichner, *pro se*
Post Office Box 1062
Knoxville, TN 37901
865-919-7419

# IN THE DISTRICT COURT OF KNOX COUNTY, TENNESSEE

FILED

2019 MAR 22 P 3: 55

U.S. DISTRICT COURT
EASTERN DIST. TENN.

_____ DEPT. CLERK

SUSAN CARRICHNER,                     )
                                      )
    **Plaintiff,**                    )
                                      )
**v.**                                )     No. _____
                                      )
KENNETH R. DAVIN, individually        )
and N.I.C. MANAGEMENT, LLC            )
creator of the "ALTHEA 501 TRUST"     )
                                      )
    **Defendants.**                   )

---

## PLAINTIFF SUSAN CARRICHNER'S AFFIDAVIT
### And OATH OF CERTIFICATION AND DECLARATION

---

I, Susan Carrichner, having been duly sworn to tell the truth hereby declares that the content of this Complaint is true and correct to the best of my knowledge and belief. Affiant further swears that:

(a) The right to collect and pursue Defendants has been transferred to me as the sole shareholder of Dragonfly Investments Corporation by Corporate Resolution and issuance of a "Right to Collect and Assignment of Indebtedness" dated February 28, 2019.

(b) Dragonfly Investments Corporation was paid approximately Two-Hundred-Twelve-Thousand ($212,000.00) Dollars by Defendants and the repair of the building will cost hundreds-of thousands-of-dollars more to restore it to its condition as of October 31, 2014.

(c) Any money that Defendant Davin may claim to have spent or invested in the building, has been for naught as the building is in serious disrepair and is of no use in its current condition.

(d) I have been unnecessarily damaged by the actions of Defendants.

Further the Affiant Saith Not.

This the 22nd day of March, 2019

_____
Susan Carrichner

In the State of Tennessee )
County of Knox           )

Susan Carrichner having appeared before me, with whom I am personally acquainted or having provided sufficient valid photo identification to me, has signed the above Affidavit of certification and declaration under oath, freely and without duress. This the 22nd day of March, 2019.

_____
Notary Public

My commission expires: 4/28/20